# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### HELENA DIVISION

|  |  |
|---|---|
| ANTHONY L. EVANS, | Cause No. CV 10-00049-H-DWM-RKS |
| Plaintiff, | ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND FINDINGS AND RECOMMENDATIONS |
| vs. | |
| MIKE MAHONEY, et al., | |
| Defendants. | |

## SYNOPSIS

Mr. Evans has filed a motion to proceed in forma pauperis (C.D. 1), a complaint with brief in support (C.D.2), a motion to appoint counsel (C.D. 4), and an additional brief in support of his complaint (C.D. 6). Mr. Evans's motion to proceed in forma pauperis will be granted. The motion to appoint counsel will be denied.

Mr. Evans alleges the policies at Montana State Prison violate his First Amendment rights by forbidding him to obtain National Socialist publications, pictures, and symbols. Mr. Evans should be granted leave to amend his complaint only as to his First Amendment claim against Warden Mahoney for injunctive relief regarding MSP policies because

the conclusory allegations in his complaint do not provide enough facts to determine if he states a claim.

The rest of Mr. Evans's claims should be dismissed.  Mr. Evans's First Amendment claim against Mr. Redfern should be dismissed because Mr. Redfern cannot be sued for injunctive relief in his official capacity.  Mr. Evans's racial discrimination claims against Ms. Dramstad and Ms. Foottit should be dismissed as moot.  Mr. Evans's First Amendment claim against Associate Warden Mihelich lacks standing.  Mr. Evans's retaliation claims against both Ms. Dramstad and Ms. Steyh should be dismissed because he did not exhaust his administrative remedies and he does not allege the required nexus between their alleged retaliatory actions and the infringement on his First Amendment rights.  Mr. Evans's Freedom of Information Act (FOIA) claims against Ms. Steyh and Mr. Hergott should be dismissed because the FOIA does not apply to state agencies.  Claims against Mr. Tilleman, Ms. Kountz, and the Montana Human Rights Bureau should be dismissed because Mr. Evans cannot state a constitutional claim regarding the investigation of his discrimination claims.  Finally, the First Amendment claims against Director Ferriter and Ms. Ambrose

should be dismissed because Mr. Evans has no due process right to a particular grievance procedure.

## JURISDICTION AND VENUE

Jurisdiction lies under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a), and 42 U.S.C. § 1983. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391 and Local Rule 1.11(a)(2)(C).

## MOTION TO PROCEED IN FORMA PAUPERIS

Mr. Evans submitted a declaration and account statement sufficient to make the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis will be granted. 28 U.S.C. § 1915(a).

Pursuant to 28 U.S.C. § 1915(b)(1), Mr. Evans is required to pay the statutory filing fee for this action of $350.00. Mr. Evans submitted account statements showing average monthly deposits of $76.00 over the six months immediately preceding the filing of this action. Therefore, an initial partial filing fee of $15.20 will be assessed by this Order. 28 U.S.C. § 1915(b)(1)(B) (allowing an assessment in the amount of 20% of the prisoner's average monthly deposits). By separate order, the Court will direct the appropriate agency to collect the initial

partial filing fee from Mr. Evans's account and forward it to the Clerk of Court.

Thereafter, Mr. Evans will be obligated to make monthly payments of 20% of the preceding month's income credited to Mr. Evans's prison trust account. The percentage is set by statute and cannot be altered. *See* 28 U.S.C. § 1915(b)(2). By separate order, the Court will direct the agency having custody of Mr. Evans to forward payments from Mr. Evans's account to the Clerk of Court each time the amount in the account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

Mr. Evans's complaint shall be deemed filed as of the date the Motion to Proceed in Forma Pauperis was filed and the proposed complaint was delivered to the Clerk of Court. *See Loya v. Desert Sands Unified Sch. Dist.*, 721 F.2d 279, 280-81 (9th Cir. 1983); *see also United States v. Dae Rim Fishery Co.*, 794 F.2d 1392, 1395 (9th Cir. 1986) (concluding complaint constructively filed when delivered to clerk of court).

## REVIEW UNDER 28 U.S.C. § 1915(e)(2)

Mr. Evans is a prisoner proceeding in forma pauperis. His

complaint must be reviewed under 28 U.S.C. § 1915 and 28 U.S.C. §
1915A.  Sections 1915A(b) and 1915(e)(2)(B) require dismissal of a
complaint before it is served upon the defendants if it is "frivolous,"
"fails to state a claim upon which relief may be granted," or "seeks
monetary relief from a defendant who is immune from such relief."

 A complaint is frivolous if it "lacks an arguable basis either in law
or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827,
1831-32, 104 L.Ed.2d 338 (1989).  A complaint fails to state a claim
upon which relief may be granted if a plaintiff fails to allege the
grounds of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007)
(quotation omitted).  This requirement demands "more than labels and
conclusions, [or] a formulaic recitation of the elements of a cause of
action." *Twombly*, 550 U.S. 544.  A complaint must "'give the defendant
fair notice of what the . . . claim is and the grounds upon which it
rests.'" *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167
L.Ed.2d 1081 (2007)(quoting *Bell*, 127 S.Ct. at 1964 (quoting *Conley v.
Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957))).

 Rule 8(a)(2) requires a complaint to "contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted).  The "plausibility standard" is guided by two working principles. *Iqbal*, 129 S.Ct. at 1949.  First, although all of the allegations contained in a complaint must be accepted as true, that tenet "is inapplicable to legal conclusions." *Iqbal*, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. Second, "[d]etermining whether a complaint states a plausible claim for relief will, . . . , be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

Pleadings that are no more than conclusions are "not entitled to the assumption of truth." *Iqbal,* 129 S.Ct. at 1950.  Legal conclusions must be supported by factual allegations.  *Iqbal,* 129 S.Ct. at 1950.

Even after *Twombly*, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers'." *Erickson*, 127 S.Ct. at 2200.

## DISCUSSION

### Parties

Mr. Evans is a pro se prisoner incarcerated at Montana State Prison in Deer Lodge, Montana.  Mr. Evans names Mike Mahoney, Warden; Steve Redfern, policy maker; Desiree Dramstad, Library Director; Jolene Foottit, teacher; Leonard J. Mihelich, Associate Warden; Michele L. Steyh, Unit Manager; Greg Hergott, Education Director; Travis Tilleman, HRB Investigator; Katherine Koontz, HRB Bureau Chief; Montana Human Rights Bureau; Michael Ferriter, DOC Director; and Colleen Ambrose, DOC Legal Counsel.

### Official and Individual Capacities

Mr. Evans has sued all of the Defendants in both their official and personal capacities.  (C.D. 2, p.2)  Before discussing Mr. Evans's claims against each named Defendant, it is necessary to determine in what capacity each Defendant is capable of being sued.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person" acting under color of state law.

Page 7 of  38

*West v. Atkins*, 487 U.S. 42, 48 (1988).  States, and state agencies that are an arm of the state, are not considered "persons" for § 1983 purposes and are generally immune from lawsuits.  *Howlett v. Rose*, 496 U.S. 356, 365 (1990).  State officials sued in their official capacity for damages are not persons in § 1983 cases; however, state officials sued in their official capacity in actions seeking injunctive relief are persons.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1997).

State officials sued in their personal capacity are persons for § 1983 purposes if acting under color of state law.  *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).  Prison officials acting in their official capacity act under color of state law.  *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).  While many state officials are entitled to absolute immunity from § 1983 suits, prison officials are not among them. *Procunier v. Navarette*, 434 U.S. 555, 561 (1978).  Qualified immunity does not apply to suits for injunctive relief.  *Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir. 2007)(vacated on other grounds by *Hunter v. Hydrick*, 129 S.Ct. 2431 (2009)).  A state official may be sued for prospective injunctive relief from continuing or impending state action which violates the federal constitution or a federal statute.  *Kentucky*

*v. Graham*, 473 U.S. 159, 167 n. 14, (1985); *Ex Parte Young*, 209 U.S. 123, 159-160 (1908).

Mr. Evans requests nominal damages from each Defendant, and requests the Court order that Warden Mahoney change MSP policies to allow National Socialist materials.  Warden Mahoney is the only named Defendant who can be sued for injunctive relief in his official capacity, as he is the only Defendant in a position to change the policies as requested.  *Kentucky v. Graham*, 473 U.S. at 167.  The remaining Defendants can only be sued in their personal capacities for the nominal damages requested by Mr. Evans.

## DISCUSSION

1.  <u>First Amendment Challenge to MSP Policies against Warden Mahoney</u>

Mr. Evans alleges Warden Mahoney violated his First Amendment rights by enforcing MSP Policy 5.4.1 which does not allow inmates to receive publications which "advocate racial, religious, or national supremacy or hatred."  Mr. Evans claims this policy unfairly prohibits all National Socialist publications, pictures, and symbols

while allowing other political publications, pictures, and symbols, such as from the Democrat and Republican parties.  This policy regulates literature coming into the prison, as opposed to communications sent out of the prison by prisoners.  Mr. Evans seeks a court order "instructing MSP Warden Mike Mahoney to change MSP Policies 5.4.1 and 3.4.1 to allow National Socialist publications, pictures, and symbols. . . ."  (C.D. 2, p.16)

Courts must show "considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world."  *Abbot*, 490 U.S. at 408.  In *Abbot*, the United States Supreme Court explained the enhanced restriction on prisoners' First Amendment rights for incoming publications:

We deal here with incoming publications, material requested by an individual inmate but targeted to a general audience. Once in the prison, material of this kind reasonably may be expected to circulate among prisoners, with the concomitant potential for coordinated disruptive conduct. Furthermore, prisoners may observe particular material in the possession of a fellow prisoner, draw inferences about their fellow's beliefs, sexual orientation, or gang affiliations from that material, and cause disorder by acting accordingly.

*Abbot*, 490 U.S. at 413.

"When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89, 107 S.Ct. at 2261. The *Turner* reasonableness inquiry governing incoming prison publications has four factors: (1) whether the underlying governmental objective is legitimate and neutral and the regulations are rationally related to that objective; (2) whether the prisoners have any alternative means of exercising the right in question; (3) the impact that accommodating the constitutional right in question will have on the other inmates and guards; and (4) whether the prison can easily use alternative means that do not infringe on the prisoners' rights. *Abbot*, 409 U.S. at 414-419, citing *Turner*, 482 U.S. at 90-92.

In *Abbot*, prisoners challenged the constitutionality of several regulations governing prison officials' screening of publications. The relevant challenged publications were 28 CFR § 540.71(b)(5),(7)(1988): "It (the publication) depicts, describes, or encourages activities which may lead to the use of physical violence or group disruption; It is sexually explicit material which by its nature or content poses a threat to the security, good order, or discipline of the institution, or facilitates

criminal activity." *Abbot*, 490 U.S. at 405.  The prison officials used these regulations to ban publications that described inadequate medical treatment of prisoners, martial arts, electronics, homosexual rights, neo-Nazism, and left-wing politics.  *Abbot*, 490 U.S. at 431.  The regulations were facially valid under the *Turner* standard, and the case was remanded to determine the validity as applied to the 46 rejected publications.  *Abbot*, 490 U.S. at 419.

"Some content regulation is permissible in the prison context." *McCabe v. Arave*, 827 F.2d 634 (9th Cir. 1987) citing *Martinez*, 416 U.S. at 416, 94 S.Ct. at 1812 (suggesting material that might be thought to encourage violence could be banned); *Murphy v. Missouri Dep't of Corrections*, 814 F.2d 1252, 1257 (8th Cir. 1987) (Aryan Nation materials that advocate violence or that are so racially inflammatory as to be reasonably likely to cause violence can be banned); *Aikens v. Jenkins*, 534 F.2d 751, 757 (7th Cir. 1976) (*Procunier* does not prohibit ban on literature that may reasonably be thought to encourage violence).

The *McCabe* case examined a prison regulation which banned racist literature from a chapel library.  In *McCabe*, the Ninth Circuit

distinguished between racist religious literature that could be characterized as posing a threat of violence, and religious literature that merely contained racist views.  The Ninth Circuit held that "literature advocating racial purity, but not advocating violence or illegal activity as a means of achieving this goal, and not so racially inflammatory as to be reasonably likely to cause violence at the prison, cannot be constitutionally banned as rationally related to rehabilitation."  *McCabe*, 827 F.2d 634 (9th Cir. 1987).

Mr. Evans does not state sufficient specific facts in his complaint to determine if his First Amendment claim against Warden Mahoney states a claim under the *Turner* factors.  MSP policies 5.4.1 and 3.4.1, as provided, are facially constitutional under the *Turner* factors. Although Mr. Evans conclusorily alleges that the MSP policies prevent him from receiving National Socialist publications and symbols, neither of the policies attached to his complaint specifically exclude National Socialist, or any other political group's, materials.  (C.D. 2-4, Exhibit A, C)  Mr. Evans should be allowed to amend his complaint to state facts supporting his claim that MSP policies 5.4.1 and 3.4.1 are facially unconstitutional because they prohibit National Socialist

materials.

Mr. Evans should also be allowed to amend his complaint regarding the application of MSP policies 5.4.1 and 3.4.1 to his requests for National Socialist materials.  In the current complaint, Mr. Evans does not state specifically when he made his requests, to whom, if they were denied, and if so for what reasons.  He simply alleges that the policies prevent him from receiving Hitler's *Mien Kampf, The Roots of National Socialism*, and other materials.  (C.D. 2-1, p. 6-7) None of the grievances attached to the complaint describe an incident in which he requested National Socialist materials and was denied.  The only apparently relevant request he made was for the address of the NAAWP, which he was eventually given.

Mr. Evans does allege that his retaliation claim against Ms. Dramstad was based on a fabricated threat arising from her denying him a "white supremacist book," as discussed below.  However, it is not clear whether he actually made this request, or if it was part of Ms. Dramstad's alleged fabrication.  He also does not allege these facts as pertaining to his First Amendment injunctive claim.  Mr. Evans should be allowed to amend his complaint regarding this claim to state

specifically what materials he requested, when he requested them and from whom, and why his requests were denied.  Mr. Evans must also provide facts showing that he exhausted his administrative grievances regarding these specific requests.  Generalized and conclusory grievances will not suffice.

## 2. First Amendment Challenge to MSP Policies 5.4.1 and 3.4.1 against Mr.Redfern

Mr. Evans brings the same First Amendment claim against Mr. Redfern, who he alleges drafted the policies.  (C.D. 2, p.4) As explained above, Mr. Redfern cannot be sued in his official capacity for injunctive relief.  Mr. Evans's claim against Mr. Redfern should be dismissed.

## 3. Discrimination Claim against Ms. Dramstad

Claim 3 of the complaint alleges Ms. Dramstad, the Library Director for MSP at the time, racially discriminated against Mr. Evans when she refused to provide him with the address to the National Association for the Advancement of White People.  The exhibits attached to Mr. Evans's complaint indicate Mr. Evans made a library request for the NAAWP's address on August 31, 2009 to which Ms. Dramstad responded "No."  (Court Doc. 2-4, p. 7).  On October 29, 2009,

Mr. Evans sent a second library request seeking the address to the Jesus Christ Christian Aryan Nations Church.  Ms. Dramstad responded, "Use a regular kite for address requests.  Also, quit asking me for information that suggests affiliation with unsanctioned groups." (Court Doc. 2-4, p. 10).

On October 23, 2009, after Mr. Evans filed a grievance regarding the denial of the NAAWP address, Grievance Coordinator Kris Studeny granted the grievance "in effect" and provided the address for the NAAWP.  (Court Doc. 2-4, p. 13).

Mr. Evans contends Ms. Dramstad's actions violated his First Amendment rights, Fourteenth Amendment Equal Protection rights, and the International Convention on the Elimination of all Forms of Racial Discrimination (ICERD).  (Court Doc. 2, p. 7).

Mr. Evans's claims regarding the address request are moot.  "A case becomes moot when interim relief or events have deprived the court of the ability to redress the party's injuries." *United States v. Alder Creek Water Co.*, 823 F.2d 343, 345 (9th Cir. 1987).  There must be a present controversy over which the court can grant relief in order to state a claim.  *Village of Gambell v. Babbitt*, 999 F.2d 403, 406 (9th

Cir. 1993).

Mr. Evans was provided the address for the NAAWP several days before he filed his second request with Ms. Dramstad, and over one year before he filed this complaint.  Mr. Evans got the information he requested.  There is no present controversy over which this Court can grant relief.  Mr. Evans's First and Fourteenth Amendment and ICERD claims against Ms. Dramstad should be dismissed since they are moot.

4.  <u>Discrimination Claim against Ms. Foottit</u>

Mr. Evans brought the same claims against Ms. Foottit who was also a librarian at MSP.  Mr. Evans essentially alleged that Ms. Foottit agreed with Ms. Dramstad's decision not to provide the address to the NAAWP, and thus racially discriminated against him.  (C.D. 2, p. 7) The same analysis applies for this claim as that against Ms. Dramstad. The claims against Ms. Foottit should also be dismissed because they are moot.

5.  <u>Pen Pal Policy</u>

Mr. Evans alleges Associate Warden Mihelich issued a memorandum stating that "pen pals are not authorized."  Mr. Evans

argues this memorandum does not serve a legitimate penological interest and violates the censorship standards set forth in *Procunier v. Martinez*.  However, Mr. Evans does not allege that he has suffered any harm because of this memorandum.  Mr. Evans's complaint states that Mr. Mihelich's memorandum violates the First Amendment, but he does not state that he had a pen pal, sought a pen pal, or that this policy has affected him in any way.  (C.D. 2-1, p.13, C.D. 2-4, Exhibit N)

A litigant must have standing under Article III of the U.S. Constitution to state a claim.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006).  The Constitution limits "federal court jurisdiction to actual cases or controversies."  *Id.* at 342.  "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)).  The plaintiff's injury must be "actual or imminent" and not hypothetical in order to have standing. *Id.* at 344 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)).

Mr. Evans does not allege that he has been harmed by this

memorandum.  He lacks standing and his claim against Associate

Warden Mihelich should be dismissed.

6.  <u>Retaliation Claim against Ms. Dramstad</u>

Mr. Evans alleges Ms. Dramstad falsely reported on November 4,

2010, that Mr. Evans threatened her after she refused to provide him

with a "white supremacist" book.  This alleged fabrication occurred 12

days after Mr. Evans received the address Ms. Dramstad denied him.

(C.D. 2-1, p.11)  Mr. Evans filed a grievance regarding this incident on

April 7, 2010, alleging that "Ms. Dramstad and Ms. Steyh . . . racially

profiled me by using my race as a pre-text to place me under

investigation for allegedly threatening Ms. Dramstad . . .."  (C.D. O-1)

This grievance was not processed because it was untimely.  (C.D. O-1)

To state a claim for First Amendment retaliation in the prison

context, a plaintiff must allege five elements: (1) a state actor took an

adverse action against the plaintiff, (2) because of, (3) the plaintiff's

protected conduct, (4) which chilled the plaintiff's exercise of his First

Amendment rights, and (5) did not reasonably advance a legitimate

correctional goal.  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir.

2005).  An allegation of "harm that is more than minimal" is sufficient

to satisfy the fourth element, even if a plaintiff fails to allege a chilling effect. *Rhodes*, 408 F.3d at 567-68, n. 11.

To prove retaliation, a plaintiff must show defendants took adverse action against him that "would chill or silence a person of ordinary firmness from future First Amendment activities." *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) (*citing Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999)).  Retaliation is not established simply by showing adverse activity by defendant after protected speech; rather, plaintiff must show a nexus between the two.  *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, i.e., "after this, therefore because of this").  In a civil rights action, the plaintiff bears the burden of establishing that the actual "substantial" or "motivating" factor behind the deprivation of constitutional rights was retaliation for exercising legal rights. *Soranno's*, 874 F.2d at 1314 (*citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In *Rhodes*, Mr. Rhodes alleged prison officers arbitrarily confiscated his typewriter and CD player, destroyed his typewriter

after he used it to file grievances against the officers, fired him and threatened to transfer him for filing grievances, and physically assaulted him.  These facts did state a cognizable First Amendment retaliation claim.  *Rhodes v. Robinson*, 408 F.3d 559 (9th Cir. 2004).

The claim against Ms. Dramstad must be dismissed for two reasons.  First, Mr. Evans did not exhaust his prison administrative remedies.  (C.D. 2-4, Exhibit P)  Prisoners must properly exhaust their administrative remedies before bringing suit under § 1983 against the prison or prison officials.  42 U.S.C. § 1997e; *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  "[A] prisoner must complete the administrative review process in accordance with the applicable procedural rules, <u>including deadlines</u>, as a precondition to bringing suit in federal court."  *Woodford*, 548 U.S. at 88 (emphasis added).  Mr. Evans's retaliation claims should be dismissed for failure to exhaust his prison administrative remedies.

Even if Mr. Evans had exhausted his administrative remedies, he still does not allege facts that support a First Amendment retaliation claim.  Discarding the legal conclusions in Mr. Evans's allegations such as "racially profiled" and "using my race as a pretext," Mr. Evans does

not describe any actions committed by Ms. Dramstad that are suitably connected with his First Amendment infringement.

Taking all of Mr. Evans's allegations as true, Ms. Dramstad falsely reported that Mr. Evans threatened her when she denied his request for a "white supremacist" book.  Ms. Dramstad's alleged fabrication is not the type of direct retaliation contemplated by the test established in *Rhodes*.  Mr. Evans was not placed directly in solitary confinement because he asked for white supremacy books.  Instead, he alleges the librarian from whom he requested the books lied about him threatening her several days after his request.  Mr. Evans does not allege that Ms. Dramstad knew that this fabrication would lead to his placement by Ms. Steyh in solitary confinement.  In stark contrast with Mr. Rhodes, whose typewriter was broken to prevent him from filing grievances against prison officers, Mr. Evans does not allege the required nexus between Mr. Dramstad's actions and his alleged First Amendment infringement.  See *Huskey*, 204 F.3d at 899.  His retaliation claim against Ms. Dramstad should be dismissed.

7.  <u>Retaliation Claim against Ms. Steyh</u>

Mr. Evans also alleges Ms. Steyh racially profiled him by placing

him in pre-hearing solitary confinement for 31 hours pending investigation of the allegedly fabricated threat against Ms. Dramstad. (C.D. 2-1, p. 12, Exhibit O-1) This occurred on November 4, 2009.  Mr. Evans does not explain why he was released from solitary, or whether a hearing took place after his confinement.  Mr. Evans filed a grievance against both Ms. Dramstad and Ms. Steyh on April 7, 2010.  The grievance was untimely.  (C.D. 2-4, Exhibit O &P)

As with Ms. Dramstad, the claims against Ms. Steyh should be dismissed for two reasons.  First, Mr. Evans failed to exhaust his prison administrative remedies. *Woodford*, 548 U.S. at 88.  Second, Mr. Evans's retaliation claim against Ms. Steyh fails on the merits.  Mr. Evans does not allege that Ms. Steyh knew anything about his request for a "white supremacy" book–the only fact that could support his claim First Amendment retaliation claim.  Mr. Evans does not even specifically allege that Ms. Steyh knew that Ms. Dramstad was lying. Taking the facts as pled, and ignoring the legal conclusion of racial discrimination, Ms. Steyh was doing exactly as required by putting Mr. Evans in pre-hearing confinement while she investigated the alleged threat.  "A plaintiff's belief that a defendant acted from an unlawful

motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001); *see also Forsythe v. Walters*, 38 Fed.Appx. 734, 738 (3rd Cir. 2002)(upholding dismissal of retaliation claim finding no evidence of any nexus between the exercise of First Amendment rights and alleged retaliatory conduct).

Mr. Evans's retaliation claim against Ms. Steyh should be dismissed because (1) he did not exhaust his administrative remedies, and (2) he does not allege the required nexus between Ms. Steyh's conduct and the infringement on his First Amendment rights.

8. <u>Freedom of Information Act</u>

Next, Mr. Evans brings claims under the Freedom of Information Act alleging Defendants Ms. Steyh and Mr. Gergott violated the FOIA when they refused to acknowledge his request for all documentation regarding the alleged November 4, 2009 threat against Ms. Dramstad.

These claims fail as a matter of law. The FOIA and the Privacy Act apply only to "agencies" as that term is defined under 5 U.S.C. §

551(1) and 5 U.S.C. § 552(e).  Under these definitions, "agency" does not encompass state agencies or bodies.  Even though the prison may receive federal funding, that is insufficient to convert acts of state governmental bodies into federal governmental acts.  *United States v. Orleans*, 425 U.S. 807, 816, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976); *Forsham v. Harris*, 445 U.S. 169, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980).

As MSP is not federal agency, its employees are not bound by FOIA.  These claims should be dismissed.

9. <u>Montana Human Rights Bureau</u>

Mr. Evans alleges that HRB Investigator Mr. Tilleman's failure to get statements from Mr. Evans's witnesses during the course of his investigation of Evans's human rights complaint violated Mr. Evans's First Amendment rights and Fourteenth Amendment due process rights.

Due process applies only to deprivations of "life, liberty, or property."  U.S. Const. amend. XIV, § 1.  While the due process clause protects against deprivations of property, it does not itself create property interests.  *Doyle v. City of Medford*, 606 F.3d 667 (9th Cir. 2010).  "To have a property interest in a benefit, a person clearly must

have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).*  Property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S at 577.

Mr. Evans, therefore, must establish that the Montana Human Rights Act somehow created a "legitimate claim of entitlement" to having his witnesses interviewed during the investigation of his complaint.  Montana statutes allow a person claiming to be aggrieved by any discriminatory practice to file a complaint with the Department of Labor and Industry.  Mont Code. Ann. § 49-2-501.  Once a complaint has been filed, Mont. Code Ann. § 49-2-504 requires the Department of Labor and Industry to "informally investigate the matters set out in the complaint promptly and impartially to determine whether there is reasonable cause to believe that the allegations are supported by a preponderance of the evidence."

This statute only creates an obligation for the Human Rights Bureau to conduct an investigation; there is no delineation of how that investigation is to be conducted.  There is no requirement that named witnesses be interviewed.

Moreover, a complaining party dissatisfied with the actions of the Montana Human Rights Bureau may file their own suit in either state or federal court, which Mr. Evans has done.  Since any resulting court actions would be entirely de novo and would not rely on the Montana Human Rights Bureau's actions, Mr. Evans's interest in remedying any discrimination which is still occurring and obtaining relief for past discrimination is fully satisfied.  *See Hall v. EEOC*, 456 F.Supp. 695 (N.D.Cal., 1978)(plaintiff failed to state a claim against the EEOC for inadequate investigation into employment discrimination claims).

Mr. Evans cannot state a constitutional claim with regard to the Montana Human Rights Bureau's investigation of his claims.  Claims alleged against Defendants Mr. Tilleman, Ms. Kountz, and the Montana Human Rights Bureau should be dismissed.

10. Grievance policy claims against Director Ferriter and Ms. Ambrose

Mr. Evans's last two claims allege Director Ferriter and DOC

Legal Counsel Ms. Ambrose violated his constitutional rights when they failed to timely respond to his grievances.  Prisoners have a First Amendment right to petition the government for a redress of grievances and have a First Amendment right to file prison grievances. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).  But, "[t]here is no legitimate claim of entitlement to a grievance procedure." *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).  Evans does not have a liberty interest in particular grievance procedure and therefore has no due process right to the handling of grievances in any particular manner.  *Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003)*.

Therefore, Claims 13 and 14 against Director Ferriter and Ms. Ambrose should be dismissed.

## MOTION TO APPOINT COUNSEL

Mr. Evans has also filed a Motion for Appointment of Counsel. (Court Doc. 4).  No one, including incarcerated prisoners, has a constitutional right to be represented by appointed counsel when they choose to bring a civil lawsuit under 42 U.S.C. § 1983. *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *withdrawn on other grounds*, 154 F.3d 952, 962 (9th Cir. 1998).  In fact, unlike in criminal

cases, the statute that applies does not give a court the power to simply appoint an attorney. 28 U.S.C.§ 1915 only allows the Court to "request" counsel to represent a litigant who is proceeding in forma pauperis. 28 U.S.C. §1915(e)(1). A judge cannot order a lawyer to represent a plaintiff in a § 1983 lawsuit–a judge can merely request a lawyer to do so. *Mallard v. United States Dist. Court*, 490 U.S. 296, 310, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989). Further, much different from a criminal case, a judge may only even request counsel for an indigent plaintiff under "exceptional circumstances." 28 U.S.C. § 1915(e)(1) (formerly 28 U.S.C. § 1915(d)); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

> A finding of exceptional circumstances requires an evaluation of both 'the likelihood of success on the merits and the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved.' Neither of these factors is dispositive and both must be viewed together before reaching a decision.

*Terrell*, 935 F.2d at 1017 (citing *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986) (citations omitted).

Plaintiffs representing themselves, or "pro se litigants," are rarely able to research and investigate facts easily. This alone does not deem

a case complex.  *See Wilborn*, 789 F.2d at 1331.  Factual dispute and thus anticipated examination of witnesses at trial does not establish exceptional circumstances supporting an appointment of counsel. *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997) overruled on other grounds *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998)(en banc). Many indigent plaintiffs might fare better if represented by counsel, particularly in more complex areas such as discovery and the securing of expert testimony.  However, this is not the test.  *Rand*, 113 F.3d at 1525.

Mr. Evans has done a thorough, clear, and understandable job presenting what he believes to be claims.  His writing is quite sufficient to communicate his positions.  Mr. Evans has not demonstrated exceptional circumstances that would empower a court to request counsel to represent him in this matter.  The motion to appoint counsel will be denied.

## LEAVE TO AMEND

Although 28 U.S.C. § 1915(e)(2) requires a dismissal for the reasons stated, it does not deprive the district court of its discretion to grant or deny leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1127

(9th Cir. 2000).  The court can decline to grant leave to amend if "it

determines that the pleading could not possibly be cured by the

allegation of other facts."  Lopez, 203 F.3d. at 1127 (quoting Doe v.

United States, 58 F.3d 494, 497 (9th Cir. 1995)).  Leave to amend is

liberally granted to pro se litigants unless it is "absolutely clear that

the deficiencies of the complaint could not be cured by amendment."

Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (citing Broughton

v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980)).

Mr. Evans's complaint was quite thorough and articulate.  He

constructed his claims carefully and attached many relevant exhibits

he believes support his claims, although not required to do so.  As

stated previously, Mr. Evans should be permitted to amend his

complaint only as to his First Amendment claim for injunctive relief

against Warden Mahoney.  The subsequent claims in his complaint

could not cured by the allegation of additional facts and should be

dismissed.

In his most recent brief (C.D. 6), Mr. Evans appears to assert a

Religious Land Use and Institutionalized Persons Act (RLUIPA) claim

for the first time.  In order to properly assert a RLUIPA claim, Mr.

Evans must specifically allege how his rights were violated under RLUIPA in his amended complaint.

Mr. Evan's amended complaint must be retyped or rewritten in its entirety on the court-approved form and may not incorporate any part of the original complaint by reference.  If Mr. Evans fails to use the court-approved form, the Court may strike the amended complaint and dismiss this action without further notice.  An amended complaint supersedes the original complaint.  Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992); Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1546 (9th Cir. 1990); Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  The amended complaint must be complete in itself without reference to any prior pleading.  Once an amended complaint is filed, the original pleading no longer serves a function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  Mr. Evans may include only one claim per count.

## MULTIPLE CLAIMS AND POSSIBLE STRIKE

Mr. Evans's complaint alleged at least three different claims against different parties based on separate facts: the Human Rights

Bureau claims, the FOIA claims, and the First Amendment claims. Defendants may be joined in one action if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.  Fed.R.Civ.P. 20(a)(2).

Also, pursuant to Standing Order No. DWM-27, "no prisoner may maintain more than two (2) civil actions in forma pauperis at one time, unless the prisoner shows that he or she is under imminent danger of serious physical injury." If Mr. Evans's claims are dismissed, the dismissal should count as at least one strike under the "3-strikes" provision of 28 U.S.C. § 1915(g).  Under the 3-strikes provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis under 28 U.S.C. § 1915 "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under

imminent danger of serious physical injury." 28 U.S.C. § 1915(g).  If

Mr. Evans files another complaint in forma pauperis that contains

multiple causes of action, he should receive strikes for each of those

separate claims.

Based on the foregoing:

## ORDER

1.  Mr. Evans's Motion to Proceed in Forma Pauperis (Court Doc.

1) is granted.  The Clerk shall file the Complaint without prepayment

of the filing fee.  Plaintiff is hereby assessed $15.20 as an initial partial

filing fee.

2.  The Clerk shall edit the text of the docket entry for the

Complaint to remove the word "LODGED" and the Complaint is

deemed filed on November 8, 2010.

3.  Mr. Evans's Motion for Appointment of "Standby" Counsel

(Court Doc. 4) is denied.

4.  Any party's request that the Court grant relief, make a ruling,

or take an action of any kind must be made in the form of a motion,

with an appropriate caption designating the name of the motion,

served on all parties to the litigation, pursuant to Federal Rules of

Civil Procedure 7, 10, and 11.  If a party wishes to give the Court information, such information must be presented in the form of a notice.  The Court will not consider requests made or information presented in letter form.

5.  Pursuant to Fed.R.Civ.P. 5(a), all documents presented for the Court's consideration must be simultaneously served by first-class mail upon the opposing party or their counsel if the party is represented. Each party shall sign and attach a proper certificate of service to each document filed with the Court.  The Certificate of Service must state the date on which the document was deposited in the mail and the name and address of the person to whom the document was sent.  The sender must sign the certificate of service.

6.  At all times during the pendency of this action, Mr. Evans SHALL IMMEDIATELY ADVISE the Court and opposing counsel of any change of address and its effective date.  Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS."  The notice shall contain only information pertaining to the change of address and its effective date, except if Mr. Evans has been released from custody, the notice should so indicate.  The notice shall not include any motions for

any other relief.  Failure to file a NOTICE OF CHANGE OF ADDRESS

may result in the dismissal of the action for failure to prosecute

pursuant to Fed.R.Civ.P. 41(b).

Further, the Court issues the following:

## RECOMMENDATIONS

1.  Mr. Evans should be allowed to amend his complaint as to his First

Amendment claim against Warden Mahoney;

2.  Mr. Evans's First Amendment claim against Mr. Redfern should be

dismissed;

3.  Mr. Evans's racial discrimination claim against Ms. Dramstad

should be dismissed;

4.  Mr. Evans's racial discrimination claim against Ms. Footit should be

dismissed;

5.  Mr. Evans's First Amendment claim against Associate Warden

Mihelich should be dismissed;

6.  Mr. Evans's First Amendment Retaliation claim against Ms.

Dramstad should be dismissed;

7.  Mr. Evans's First Amendment Retaliation claim against Ms. Steyh

should be dismissed;

8.  Mr. Evans's FOIA claims against Ms. Steyh and Mr. Gergott should be dismissed;

9.  Mr. Evans's First and Fourteenth Amendment claims against Mr. Tilleman, Ms. Kountz, and the Montana Human Rights Bureau should be dismissed;

10.  Mr. Evans's First and Fourteenth Amendment claims against Director Ferriter and Ms. Ambrose should be dismissed.

11.  A strike should be added to Mr. Evans's record under the 3 strikes provision of 28 U.S.C. § 1915(g).

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Mr. Evans may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing.  As this deadline allows a party to act after the Findings and Recommendations is served, it falls under Fed.R.Civ.P. 6(d).  Therefore, three (3) days are added after the period would otherwise expire.

Any such filing should be captioned "Objections to Magistrate

Judge's Findings and Recommendations."

A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 22nd day of December, 2010.


/s/Keith Strong
Keith Strong
United States Magistrate Judge